**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JAMES GOLDSON, et al.,**

                **Plaintiffs,**            **Case No. 2:08-cv-844**

       **v.**                     **JUDGE SARGUS**

                                     **MAGISTRATE JUDGE KEMP**

**FEDERAL HOME LOAN MORTGAGE**
**CORPORATION,**

                **Defendants.**

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (Doc. 18) and Defendant's Motion to Strike Unwarranted Material (Doc. 25). For the reasons set forth herein, Defendant's Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' Motion for Class Certification and for Appointment of Class Counsel ("Motion for Class Certification") is **DENIED**.

**I.**    **Background**

Plaintiffs James and Jacqueline Goldson ("Goldsons") bring the instant action against the Federal Home Loan Mortgage Corporation ("Freddie Mac") pursuant to Ohio Revised Code § 5301.36, which provides in part that:

> (B) Within ninety days from the date of the satisfaction of a residential mortgage, the mortgagee shall record the fact of the satisfaction in the appropriate county recorder's office and pay any fees required for the recording. The mortgagee may, by contract with the mortgagor, recover the cost of the fees required for the recording of the satisfaction by the county recorder.

> (C) If the mortgagee fails to comply with division (B) of this section, the mortgagor may recover, in a civil action, damages of two hundred fifty dollars. This division does not preclude or affect any other legal remedies that may be available to the mortgagor.
>
> (D) As used in this section, "residential mortgage" means an obligation to pay a sum of money evidenced by a note and secured by a lien upon real property located within this state containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium or cooperative unit.

OHIO REV. CODE § 5301.36.

The Goldsons contend, and Freddie Mac admits, that they are entitled to $250 in damages from Freddie Mac because, after they satisfied their mortgage, Freddie Mac failed to timely record that fact with the local county recorder as required by § 5301.36(B). Additionally, the Goldsons allege that there are many other individuals, "at least tens of thousands," in Ohio entitled to damages from Freddie Mac under the same statute.

A.     **The Goldsons' Claim**

In 1988, the Goldsons obtained a mortgage loan from Norwest Mortgage, Inc. to purchase a property in Columbus, Ohio. (Compl. ¶ 9.) In 1990, that loan was assigned to Freddie Mac, and by March 13, 2003, the Goldsons had repaid in full all amounts owed under the mortgage. (Compl. ¶¶ 10–11.) However, Freddie Mac subsequently failed to record their satisfaction of the mortgage within the 90 days required by § 5301.36(B), which entitles the Goldsons to $250 in damages pursuant to § 5301.36(C). (Compl. ¶ 13.) Freddie Mac agrees that the Goldsons have a meritorious § 5301.36(B) claim.

2

**B.    Class Claims**

In addition to their individual claim, the Goldsons have brought a class action suit against Freddie Mac, which encompasses the potential claims of other Ohioans pursuant to § 5301.36. The Goldsons propose the following class definition to the Court:

> all persons who, since June 5, 2002 and thereafter, paid off residential mortgages (as defined by R.C. 5301.36(D)) recorded in Ohio where the Federal Home Loan Mortgage Corporation was the mortgagee at the time of the mortgage satisfaction (payoff), and where the mortgage satisfaction was not recorded within 90 days of payoff.

(Compl. ¶ 16.)

In support of their contention that many other Ohioans have similar claims under § 5301.36, the Goldsons have included six exhibits with their Motion for Class Certification. These exhibits include analysis of information received in discovery from Freddie Mac regarding 650,000 Ohio mortgages owned by Freddie Mac that were satisfied between June 5, 2002 and spring 2009. (Vaalar Aff. ¶ 3, Feb. 19, 2010.)  According to the Goldsons, a review of only a sample of the 650,000 mortgages revealed at least 100 instances where the satisfaction of the mortgage was not timely recorded by Freddie Mac as required by § 5301.36. (Vaalar Aff. ¶¶ 4–12, Ex. A, Feb. 19, 2010.)

In response, Freddie Mac claims it is not responsible for the $250 in damages to the other purported class members because it is not the correct defendant for their claims under § 5301.36. Instead, Freddie Mac contends it uses other parties to service the mortgages it owns and that those servicers are the mortgagees responsible for fulfilling the requirements of O.R.C. § 5301.36.  Because Freddie Mac is not the mortgagee for the members of the proposed class (aside from the Goldsons), it asserts that class certification would be improper.  The Goldsons,

on the other hand, contend that, because Freddie Mac was the owner of the mortgages in question, it is the mortgagee for the purposes of § 5301.36.

## II. Defendant's Motion to Strike Unwarranted Material

Before the Court discusses the Goldsons' Motion for Class Certification, it first considers Freddie Mac's motion to strike unwarranted material from the Goldsons' reply memorandum in support of their Motion for Class Certification. According to Freddie Mac, the following should be stricken from the reply memorandum: (1) excerpts from the deposition testimony of two Freddie Mac employees; (2) an affidavit of Stephanie Vaaler; and (3) legal analysis discussing *Radatz v. Fed. Nat'l Mortgage Ass'n*, 891 N.E.2d 1236 (Ohio Ct. App. 2008).

### A. Deposition Testimony

Freddie Mac first seeks to strike Exhibits 1 and 2 of the Goldsons' reply memorandum. These exhibits are excerpts from depositions of Freddie Mac employees. The first exhibit is an excerpt from Sharon Novak's deposition. The Goldsons cite Novak's response to questions regarding whether she believed Freddie Mac owned the mortgages that they purchased from lenders to support their argument that Freddie Mac is the mortgagee for purposes of § 5301.36. (Doc. 24 at 6–7.) The second exhibit is an excerpt from the deposition of John Felix. The Goldsons cite his response to questions inquiring into his understanding of the meaning of the term "mortgagee." (Doc. 24 at 7.) Freddie Mac contends that each excerpt refers to questions and answers that resulted in witnesses offering legal conclusions and, therefore, the Court should strike them from the Goldsons' reply.

Witness testimony offering legal conclusions "invade[s] the province of the court to determine the applicable law." *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)(quoting *FAA v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983)). *See also Jenkins v. Hyundai*

4

*Motor Fin. Co.*, No. C2-04-720, 2008 WL 781862 (S.D. Ohio March 24, 2008)("In the Court's view, the experts' opinions should be excluded insofar as each offers legal conclusions on matters that are solely for the Court's determination."). Indeed, "it is the responsibility of the court, not testifying witnesses, to define legal terms." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). In this instance, the Goldsons rely on Felix's response to questions about which party Mr. Felix perceived to be the mortgagee, (see Felix Dep. 66), to support their position as to the definition of mortgagee for purposes of § 5301.36. The determination of the definition of mortgagee within the statute is a legal issue to be decided by the Court. As such, the Court will not consider Mr. Felix's testimony to the extent it reaches a legal conclusion regarding the meaning of that term under Ohio law.

On the other hand, the Goldsons have not cited Novak's testimony in support of a conclusion of law. The specific question of relevance regarding Novak's testimony was: "Is there any doubt in your mind that Freddie Mac is the owner of the mortgages that it purchases from the lenders that generate the mortgages?" (Novak Dep. 82.) Novak answered this question in the negative. (Novak Dep. 82.) The question of whether Freddie Mac owned the loans combines issues of both law and fact, and, therefore, the Court may consider any opinion offered by a witness to the extent that the opinion relates to the factual component of the question.

In the alternative, Freddie Mac alleges that the Goldsons' reliance on Novak's testimony in their reply violates Local Rule 7.2, as citation of Novak's testimony should have been done in the Goldson's initial memorandum. This contention relies on a portion of Local Rule 7.2(d), which states: "When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence." S.D. OHIO CIV. R. 7.2(d). However,

Rule 7.2(d) also states that: "Evidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition." S.D. OHIO CIV. R. 7.2(d). Here, the Goldsons presented a small portion of Novak's deposition to establish that Freddie Mac was the owner of the 650,000 mortgages at issue in this case. Although Freddie Mac did not contend in its memorandum in opposition that it was not the owner of mortgages, it did raise the issue of whether an institution in its position relative to mortgage borrowers, originators, and servicers could be considered a mortgagee for purposes of § 5301.36. To support their contention that Freddie Mac is a mortgagee, the Goldsons cited Novak's testimony in their reply. Because the Goldsons' citation of Novak's testimony in this way was "limited to [the] need[] to rebut the positions argued in memoranda in opposition," it was proper.

### B.     The Second Affidavit of Stephanie Vaaler

Freddie Mac also asks the Court to strike the affidavit of paralegal Stephanie Vaaler that was attached as Exhibit 3 to the Goldsons' reply. (*See* Vaalar Aff., Mar. 29, 2010.) The Goldsons had attached an earlier affidavit of Vaaler to their Motion for Class Certification. This earlier affidavit described how the Goldsons used the information Freddie Mac provided to them to determine whether there were other potential plaintiffs in this case. Freddie Mac offered numerous perceived deficiencies with Vaaler's first affidavit in its memorandum in opposition, and now asks the Court to strike this second affidavit. Specifically, Freddie Mac contends the affidavit was untimely—the information it provided should have been in the original affidavit— and, in the alternative, that the affidavit does not meet the requirements of Rule of Evidence 702. As explained below, the Court will refrain from considering Paragraph 12 of the affidavit, but finds that the remaining averments are properly before the Court.

"A district court may exclude from consideration an affidavit that it deems improper."

*Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 599–600 (S.D. Ohio 2003)(citing *Lombard v.*

*MCI Telecomm. Corp.*, 13 F.Supp. 2d 621, 625 (N.D. Ohio 1998)).   In Freddie Mac's

memorandum opposing class certification, it claimed that Ms. Vaaler's first affidavit was

deficient because it was missing information as to:

> [1] how many of the 600,000+ mortgages . . . Ms. Vaaler investigated in culling the 100 Mortgages [that the Goldsons supplied as evidence of a class]
>
> [2] for how many—if any—of the 100 Mortgages was Freddie Mac the Record Mortgagee
>
> [3] how many of the 100 Mortgages fell within the "residential mortgage" definition of § 5301.36(D)
>
> [4] for how many of the 100 Mortgages was the pertinent Satisfaction *received*—i.e. "recorded" per *Gilbert* [*v. Fifth Third Bancorp*, 823 N.E.2d 11 (Ohio Ct. App. 2004)]—by the county recorder ninety or fewer days after pay-off
>
> [5] how many—if any—of the 100 Morgages' mortgagors previously became members of some class in § 5301.36(B) litigation.

(Doc. 20 at 8–9.)  The Goldsons supplied a second affidavit from Vaaler in an attempt to redress

some of the issues raised by Freddie Mac.  Specifically, Vaaler's second affidavit states:

> 6. I [ ] received a copy of Freddie Mac's Memorandum Opposing Class Certification.  The Memorandum argues that it would take "unguided assumption" and "surmise" to determine if a mortgage in the class contained two or fewer residential units.  Freddie Mac's Memorandum at page 14.  This is incorrect.
>
> 7. The information that a mortgage is on a property containing two or fewer residential units is available in the public record.
>
> 8. I reviewed these [sic] 100 mortgages in Exhibit A to determine if the properties covered by the mortgages were single-family dwellings.

9. The publicly available records regarding each mortgage and the county auditor's offices indicated that all 100 of the properties secured by the mortgages listed in Exhibit A are single-family residential dwellings.

10. The Memorandum also criticized the [Goldsons'] submission of 100 late releases, arguing that does not show the total number of late releases.

11. I reviewed 600 mortgage transactions produced by the Defendant and found over 150 late releases.

12. Based on sampling, the number of late releases in this total class will exceed 25,000 people.

(Vaalar Aff. ¶¶ 6–12, Mar. 29, 2010.)

Vaaler's second affidavit attempts to clarify and respond to the issues Defendant presented in its memorandum in opposition. "[A] reply affidavit[ ] that respond[s] only to the opposing party's brief [is] properly filed with the reply brief." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476–77 (6th Cir. 2002). The second affidavit addressed two issues involving the methods by which Vaaler selected mortgages to appear in Exhibit A to her original affidavit (the list of 100 mortgages that purport to show a class of individuals with similar claims to the Goldsons). Although the Goldsons could have been clearer about their methodology in the original affidavit, the information they provided in the second affidavit was in direct response to issues raised by Freddie Mac in its memorandum in opposition. Accordingly, the submission of the second affidavit was proper under Local Rule 7.2(d).

The Federal Rules of Evidence provide that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." FED. R. EVID. 702. Here, paragraph 12 of the affidavit contains Valaar's opinion that, based on her sampling technique, the total class could exceed 25,000.

However, as the record includes no evidence demonstrating that Valaar is an expert qualified to render such an opinion, the Court will disregard paragraph 12 of Valaar's second affidavit.

### C.     Legal Analysis of *Radatz*

Finally, Freddie Mac asks the Court to strike the Goldsons discussion of *Radatz v. Fed. Nat'l Mortgage Ass'n*, 891 N.E.2d 1236 (Ohio Ct. App. 2008). In so doing, Freddie Mac relies solely on Federal Rule of Civil Procedure 12(f), which states, "the court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f) (emphasis supplied). Rule 7(a) defines a pleading as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." FED. R. CIV. P. 7(A). As such, the Goldsons' reply is not a "pleading," as the Federal Rules define them, and Rule 12(f) may therefore not be invoked to strike material therefrom. *See, e.g., Fox v. Michigan State Police Dept.*, No. 04-2078, 2006 WL 456008, *2 (6th Cir. Feb. 24, 2006)("Under Fed.R.Civ.P. 12(f), a court may strike only material that is contained in the pleadings.").

### III.   Plaintiffs' Motion for Class Certification and Appointment of Class Counsel

The Court will now consider the Goldsons' Motion for Class Certification and Appointment of Class Counsel. The standards for considering such a motion are found in Federal Rule of Civil Procedure 23.

### A.     Rule 23

A plaintiff has the burden of proving that class certification is proper. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007); *see also In re Am. Med. Sys.*, 75 F.3d 1069,

1079 (6th Cir. 1996). The four prerequisites of a class action are found in Rule 23(a) and include the following:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These prerequisites are often referred to as the numerosity, commonality, typicality, and adequacy of representation requirements.

If a plaintiff satisfies the prerequisites of Rule 23(a), she must additionally "show that her suit falls within one of the three types of class actions under [Rule] 23(b)." *Beattie*, 511 F.3d at 560. Here, the Goldsons seek certification under Rule 23(b)(3), which requires them to establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### B. Rigorous Analysis and Avoidance of the Merits

To determine whether a plaintiff has met the standards of Rule 23, the Court employs a "rigorous analysis." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *see also Beattie*, 511 F.3d at 559; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). This rigorous analysis, though, cannot include a determination of the merits of the case. The Supreme Court has held: "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule."

10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *see also Beattie*, 511 F.3d at 560. Thus, the Court's rigorous analysis must be limited to the substance and structure of Plaintiff's claims, rather than an inquiry into the merits. *See Beattie*, 511 F.3d at 561; *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006)(holding that the court should not conduct a preliminary inquiry into the merits; noting that "whether the class members can win on the merits of the issue common to the class is not a factor in determining whether [the lead plaintiff's] claim is typical").

The Court has broad discretion in deciding whether to certify a class; however, the Court must exercise that discretion within the framework of Rule 23. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

## C.     Discussion

The Court will first discuss issues related to the proposed class definition followed by an examination of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Because the Court finds that certification fails for lack of typicality and inadequate representation, the Court will not address the requirements of Rule 23(b)(3).

### 1.     Class Definition

The Goldsons propose the following class definition to the Court:

> all persons who, since June 5, 2002 and thereafter, paid off residential mortgages (as defined by R.C. 5301.36(D)) recorded in Ohio where the Federal Home Loan Mortgage Corporation was the mortgagee at the time of the mortgage satisfaction (payoff), and where the mortgage satisfaction was not recorded within 90 days of payoff.

(Compl. ¶ 16.) Freddie Mac contends that this definition is ambiguous primarily because it uses the term "mortgagee," which, as used in the statute, is undefined. "[I]mportant elements of defining a class include: (1) specifying a particular group at a particular time frame and location

11

who were harmed in a particular way; and (2) defining the class such that a court can ascertain its membership in some objective manner." *Edwards v. McCormick*, 196 F.R.D. 487, 491 (S.D. Ohio 2000)(citing *Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986)). These elements are easily met by the above-proposed definition.

Freddie Mac vigorously contends that in situations where loan servicers, as opposed to loan owners, are the recorded lien holders, the servicers should be considered the mortgagee under Ohio law. The Goldsons just as vigorously assert that the owner of the mortgage should be considered the mortgagee. As stated *supra*, the Court is precluded from evaluating the merits of an action when considering whether to certify a class. In this instance, a determination by the Court of the legal definition of "mortgagee" would arguably go to the merits of this action. Because, as discussed in Parts III.C.2.c–d, *infra*, the Court finds that the Goldsons' Motion to Certify Class fails on grounds of typicality and adequacy of representation, the Court refrains from ruling on this issue. However, in the Court's view, the inclusion of the term mortgagee in the definition of the class does not make that definition impermissibly vague. As the Goldsons have demonstrated, identification of potential class members from the records provided by Freddie Mac would be a relatively straight-forward process involving a comparison of the dates of loan satisfaction with the date of the recordation of the satisfaction in county records.

### 2.    Requirements of Rule 23(a)

#### a.    Numerosity

Rule 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). There is not a specific number that automatically qualifies a class for certification as "[i]mpracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case." *Senter v. Gen. Motors*

*Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976)(citing *Cash*, 434 F.2d at 571). When class size reaches substantial proportions, however, the numerosity requirement is usually satisfied by the numbers alone. *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir.1996); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).

Here, the Goldsons have provided evidence of 100 potential members of the proposed class, (see Vaalar Aff. Ex. A, Feb. 19, 2010), and contend that the class size may actually be substantially larger, as the 100 potential members were culled from only a relatively tiny sample of the records obtained from Freddie Mac. While the Court disregards Valaar's conclusion that the class may include 25,000 members, the Court finds that the demonstrated class size of at least 100 members satisfies the numerosity requirement of Rule 23(a)(1). *See, e.g., Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974)(holding that numerosity requirement was satisfied where putative class consisted of thirty-five members).

### b. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). However, the claims of the potential class members need not be factually identical. *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003)(citing *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996)). Furthermore, there need only be one question common to the class. *Bovee*, 216 F.R.D. at 608 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). The mere fact that questions peculiar to individual class members could remain does not necessarily defeat a finding of commonality. *Id.* (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988); *Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 476 (S.D. Ohio 2001)). On the other hand, "[i]t is not every common question that will suffice [as,] at a sufficiently abstract level of generalization, almost any set of claims

13

can be said to display commonality." *Sprague v. Gen. Motors Co.*, 133 F.3d 388, 397 (6th Cir. 1998). However, a finding of commonality is appropriate where there "is a common issue the resolution of which will advance the litigation." *Id.* Finally, conclusory allegations of commonality are insufficient to satisfy the burden of proof on certification. *Bovee*, 216 F.R.D. at 608 (citing *Falcon*, 457 U.S. at 157; *Am. Med. Sys.*, 75 F.3d at 1081). Ultimately, as with the other prerequisites, the Plaintiffs have the burden of proving to the Court that "questions of law or fact common to the class" exist.

Here, the Goldsons contend commonality is present because the claims of the proposed class members are identical—that Freddie Mac violated § 5301.36 by not timely recording the satisfaction of their mortgages. In response, Freddie Mac asserts that the Goldsons have identified no "general policy" of Freddie Mac that is "the focus of the litigation." *Bovee*, 216 F.R.D. at 608. The Court finds that the Goldsons have satisfied the commonality requirement as there are various common issues of fact or law between class members "the resolution of which will advance the litigation." These common issues include, *inter alia*; whether Freddie Mac should be considered a "mortgagee" for purposes of § 5301.36; whether Freddie Mac violated § 5301.36 by not timely recording satisfaction of mortgages; and, if so, whether class members are entitled to interest on any award of statutory damages made pursuant to § 5301.36. Additionally, the Goldsons' review of the records produced by Freddie Mac has revealed evidence to support their allegations of common issues between class members. (*See* Vaalar Aff. Ex. A, Feb. 19, 2010.) Finally, a general policy or practice, although not one reduced to writing, has been identified in Freddie Mac's alleged consistent failure to timely record mortgage satisfactions for a significant number of Ohio mortgagors.

### c. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082 (citing 1 NEWBERG § 3-13, at 3-76). Typicality also requires that the "representative's interests [are] aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.* In other words, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. However, a plaintiff's success on his or her own claim is not enough. "[T]he typicality requirement is not satisfied when a plaintiff can prove his own claim but not 'necessarily have proved anybody else's claim.'" *Beattie*, 511 F.3d at 561 (quoting *Sprague*, 133 F.3d at 399). Finally, similar to the commonality requirement, the named plaintiff's claims do not have to be identical to the claims and defenses of the other members of the putative class, and need not always involve the same facts or law, provided there is a common element of fact or law. *Beattie*, 511 F.3d at 561 (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976)); *Putnam*, 169 F.R.D. at 94.

The Goldsons allege that typicality exists in the instant case because their claims are identical to those of the proposed class. However, the Court concludes that the Goldons have failed to establish the presence of typicality, and accordingly denies the motion for class certification.

As stated in the Court's discussion of the commonality requirement, the Goldsons have sufficiently alleged and provided evidence of Freddie Mac's purported practice of frequently

failing to timely record mortgage satisfactions. This alleged practice is the source of the injuries of the Goldsons and the prospective class members.

It cannot be said, however, that the advancement of the Goldsons' claim would necessarily lead to the advancement of the claims of the proposed class. Freddie Mac has demonstrated that the Goldsons' claim is factually unique from the majority of other class members in that Freddie Mac was the "record mortgagee" in the Goldsons' case and, in other cases, Freddie Mac's loan servicers appeared as the record mortgagee. Freddie Mac's ownership of the mortgages at issue is a question of fact common to both the Goldsons and the other members of the proposed class, and if the Goldsons could establish that the owner of the mortgage is also the mortgagee under the Ohio Revised Code, they would advance not only their own claim, but the claims of the others in the class. However, because of their unique factual situation, the Goldsons' could also advance and succeed on their claim if they could prove that an entity is the mortgagee by virtue of being recorded in county records as the lien holder, regardless of actual ownership of the underlying mortgage. There is a distinct possibility that the Goldsons' advancement of their claims in this manner would cause the claims of the vast majority of class members to fail. In other words, if the Goldsons prove their claim by establishing that the mortgage holder of record (as Freddie Mac was in their case) is the mortgagee regardless of ownership, it could preclude the other class members from recovering against Freddie Mac because Freddie Mac was not the mortgage holder of record for the majority of class members. Thus, because of this possibility, the Goldsons' claims cannot be said to be typical of the other proposed class members, and their motion for class certification must fail.

### d.  Adequacy of Representation

The Goldsons' also are not adequate representatives of the proposed class.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Beattie*, 511 F.3d at 562 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)).  The adequacy requirement is essential to due process because the final decision in a class action is binding on all class members.  *See Am. Med. Sys.*, 75 F.3d at 1083 (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)).  The Sixth Circuit has developed two criteria for determining whether representation is adequate: (i) "[t]he representative must have common interests with unnamed members of the class" (common interests); and (ii) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel" (vigorous prosecution).  *Senter*, 532 F.2d at 525.

The first requirement overlaps with the commonality and typicality requirements and acts to ensure that the representative has interests co-extensive with, rather than antagonistic to, the interests of the other class members. *Day v. NLO, Inc.*, 144 F.R.D. 330, 335 (S.D. Oh. 1992).  A plaintiff may not be an adequate representative if that plaintiff is subject to unique defenses that place it in a position that is antagonistic to the interests of the class. *See Levels v. Akzo Nobel Salt, Inc.*, 178 F.R.D. 171, 179 (N.D. Ohio 1998)).  As stated above, if the Goldsons are able to establish their claim by proving that Freddie Mac is the mortgagee by virtue of being recorded as the lien holder in county records, they could preclude recovery by other class members against Freddie Mac, since Freddie Mac was not listed as the lien holder for most of the loans of the proposed class members.  Thus, the possibility exists that the Goldsons' claims could become

antagonistic to the claims of other class members. Additionally, the fact that Freddie Mac has conceded liability on the Goldsons' § 5301.36 claim calls into question the incentive of the Goldsons to vigorously prosecute the action on behalf of the other class members. Accordingly, denial of class certification is also appropriate for lack of adequate representation.

Because the Court has determined that the Goldsons have not established the prerequisites of typicality and adequate representation, the Court does not address whether the requirements of Rule 23(b)(3) have been satisfied.

## IV.     Conclusion

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion for Class Certification (Doc. 18) and **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Strike (Doc. 25).

**IT IS SO ORDERED.**

9-28-2010

**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**